Judge Coalter.
In this case it appears that the appellant, shortly before the death of Alexander Massenburg, purchased from him, for the consideration of 100Z., a certain real property in the city of Williamsburg, which he soon after sold to one James Young, who obtained possession thereof, with the knowledge of the appellee, in the lifetime of said Massenburg.
It also áppears that, about ten years previous to this transaction, Massenburg had mortgaged the premises to the appellee, together with three slaves, some cows, and all his household and kitchen furniture, with a general clause embracing “ all the moveable property in his possession,” to secure the payment, within a few months thereafter, of 428¿, 16s. 0d. said to be then due.
It farther appears, that, although the appellant had implied notice of this mortgage, it having been duly recorded, he was, in reality, ignorant thereof; that the appellee knew of his ignorance, as also of the ignorance of his alienee Young, at the time of their said purchases, but was prevailed upon- by the solicitations of Massenburg not t<? make; known his claim, he promising to pay him out of a larger fund, which he said was at his- command ;■ on which promise he relied, but was deceived by the said Massenburg, who,-in-fact, had no such fund ;■ and he never .made known, or asserted his claim, until after the death of the mortgagor.
It also appears that the appellee permitted the mortgagor, before the sale of the real property aforesaid, to sell at least one of the slaves, and the other personal property, which latter was a public sale, and at which sale it does not appear that he asserted his claim under his mortgage, al *355 though he took the bonds in his own name; but Massenburg afterwards asserted his right to those bonds, and gave an order to one of his creditors to receive part of them in payment of his debt, which the appellee offered to assign, without, at that time, asserting any right to them by virtue of the mortgage, though he now says, in his answer, that they were taken in part discharge of the mortgage, but afterwards loaned to Massenburg.
Stripping this case then, for the present, of the matters, herein after stated, going to destroy the credit of the answer, and to shew that the transactions of the appellee were, in other respects, not fair, and that, probably, either nothing was in reality due to him, or that he had sufficient in his hands to pay himself; and not deciding whether this parol agreement, not to assert his claim, (which is admitted in the answer,) amounted to a discharge of the mortgage, and a relinquishment of his claim under it, so as to enable Massenburg to sell; — stripping it, also, of the lapse of time which had occurred, and of those other public and notorious acts of abandonment and waiver of claim, as to the other property, all tending to produce a belief in the wqrld, either that the mortgage was discharged, or abandoned and considering it a naked case of a mortgagee, who, with knowledge of an actual fraud about to be committed on an innocent purchaser, is induced, by promises and persuasions of the perpetrator, not to make known, or assert his claim, until after the death of the mortgagor, so as to deprive the purchaser of an opportunity to secure himself, and of the aid of the mortgagor in unravelling a stale and dubious transaction, I would hesitate much before I would say that the conscience of site A a by-stander was not affected by such transaction. His case, as it at present appears to me, woulcj differ widely from the case of one who only knew that another was about to purchase lands on which he had a mortgage recorded, and remained quiet. This latter might be justified in presuming that such purchaser had notice of, and would guard against the effects of the prior deed ; and it might not be his duty to inquire whether he had. qctyal. *356 notice, or not, ,If such prior incumbrancer be present at the time of the purchase, and fails to assert his claim, the purchaser, with actual notice of the deed, might presume an abandonment on his part, and be thus induced to conclude the bargain; but where there is no actual notice, the presence of the prior incumbrancer has no influence on the mind of the purchaser; — .so that, had Cole been present at this sale,, that circumstance would have had no effect on the mind of the appellant, though it would have finally operated in his favour. Is the appellee’s conscience less affected then, when he knows the purchaser is deluded, and is induced, by persuasion and promises, to contribute, by his silence, to the consummation of the fraud, which he might have prevented, or arrested, than it would be had he been present at the sale, as he could in that case say, “ the purchaser was ignorant of my claim, and therefore my presence and silence was no inducement to the contract ?” The shade of difference would seem too small to be noticed. His speaking out, when, present, is for the selfish purpose of securing himself, not to guard his conscience by doing an act of justice towards the person about to be deceived.
But without intending absolutely to decide this point, yei if, in addition thereto, and to the other strong evidences of waiver and abandonment above mentioned, there are other matters tending to impeach the justice and fairness of the appellee’s claim, in its origin, and of his transactions thereafter, I cannot, under all the circumstances, hesitate to vacate the mortgage, at least so far as it respects the appellant.
As to these matters,, — the record affords strong grounds for a belief that this mortgage was, in its origin, intended to defraud .creditors : the bill alleges, that there.is, in reality, nothing due on it, and calls on the defendant to say whether the suvh spécified in the mortgage was bona fide due ; the defendant in his answer says, that, in April 1784, Mas sen. burg was indebted to him 2701. 10s. and that he had become his security for 157/. 10s.; and, to indemnify him for the latter, (which he admits Massenburg afterwards paid,) and secure the payment oifthe former, the mortgage was given ; *357 that, so far from Massenburg’s having paid one shilling of the debt, he died upwards of SOI. in his debt, independent of the 270/. 10s. for which the mortgage was given. Now it turns out, from the settlement and accounts taken by the commissioner, made up without evidence, from the books of the appellee, that, at the date of the mortgage, there stood charged on those books against Massenburg, only 84/. 13s. 9d. When we add to this the declarations of Massenburg, that the mortgage was intended to cover the property against creditors, and the testimony of several witnesses who prove, that before, and about the time the mortgage was executed, Cole was in the habit of receiving into his store large parcels of goods from Massenburg, to sell on his account, no credit whatever for which is given ; that Cole kept the accounts and papers, of Massenburg, who, till the day of his death, was urgent to have a settlement, but never could get Cole to exhibit the books and papers, the credit of the answer, as to the extent and justice of the debt, at the date of the mortgage, must be done away; for it is not pretended that Cole had other demands against Massenburg than those contained in his books. But, again, the appellee claims debits, according to those books, to the amount of 403/. 8s. 2d. giving credit only for 83/. 10s. (which credits áre without date,) leaving due to him 319/. 12s, 2d. thus making the balance on the dealings, since the mortgage, about 268/. instead of SOI. as stated in his answer. But if these credits, which are without date, were for merchandize delivered before the mortgage, and many of which are for such articles as the witnesses say Massenburg was in the habit of delivering, then nothing was due at its date. In addition to all which, Waller proves that, in a conversation with the appellee, in relation to the impropriety of asserting this claim against the appellant, he stated that he hoped he would have enough in his own hands to satisfy his demands against Massenburg, without resorting to the mortgage.
Upon the whole, I think the decree is erroneous, and must be reversed, and the mortgage declared void as it respects the appellant.